IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-408-D

| | |
|---|---|
| ANITA F. HEAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| TOM VILSACK, Secretary, | ) |
| Department of Agriculture, | ) |
| USDA Marketing Services Agency, | ) |
| | ) |
| Defendant. | ) |

Anita F. Head ("plaintiff" or "Head") is a former United States Department of Agriculture ("USDA" or "defendant") employee. Head alleges that while working for the USDA in May 2007 she was subjected to a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964. Head timely contacted the USDA EEO counselor. See 29 C.F.R. § 1614.105. The USDA's EEO counselor investigated Head's allegations, including obtaining sworn statements from all relevant witnesses. The USDA's EEO counselor did not substantiate any sex discrimination, including any alleged sexual harassment. The USDA EEO counselor provided Head with a copy of the report of investigation. Head requested an administrative decision. On December 31, 2008, the USDA issued its final decision rejecting her claims. Head then sought relief from the EEOC. On July 7, 2010, the EEOC issued its final decision rejecting her claims. On October 5, 2010, Head (who is proceeding pro se) filed her complaint in federal court and alleged sexual harassment, [D.E. 1] 3. On July 9, 2012, the USDA filed a motion to dismiss for failure to state a claim upon which relief can be granted, or in the alternative, a motion for summary judgment [D.E. 46]. Head responded in opposition [D.E. 55], and the USDA replied [D.E. 56]. As explained below, the court grants the USDA's motion for summary judgment.

I.

Head is a white female who was employed as an Agricultural Commodity Grader, GS-9, with the USDA, Agricultural Marketing Service, Tobacco Programs. On May 2, 2007, Head interviewed for one of several vacant Agricultural Commodity Grader, GS-9 positions in Cotton Programs. Compl. ¶ 9. Before the interview, the USDA had alerted six employees in the Tobacco Programs (including Head) of an impending reduction in force ("RIF") and gave them an opportunity to interview for jobs in the Cotton Programs. Six Tobacco Programs employees subject to the RIF, including Head, interviewed for five Cotton Programs positions. R. at 24, 34–35. Although the interview was in Raleigh, North Carolina, Head sought only a position in Memphis, Tennessee. R. at 24.

On the morning of the interview, Head alleges that she first went to the Raleigh office of Mitchell Smith, the Director of Field Operations for Tobacco Programs. Head had known Smith for numerous years because Head was a close friend of Smith's long-time girlfriend. R. at 30. When Head arrived, Head alleges that Smith "throwed [sic] [his] arms around plaintiff and physically tried kissing and touching private areas, using indecent gestures, and crude and offensive language." Compl. ¶ 9. Although Head's pro se complaint is vague, the affidavit she supplied in the course of the USDA's EEO investigation clarifies her version of events. According to Head's affidavit, Smith greeted her with a "hug," and she then immediately turned away in order to avoid a kiss. As she did so, he allegedly kissed "the side of [her] head behind [her] ear." R. at 66. Moreover, as Head pulled away after the hug and kiss, Head alleges that Smith's hands "brushed" her breasts and buttocks, but that he did not "grab or squeeze" her breasts or buttocks. R. at 24–25, 66.[1]

---

[1] According to Smith's affidavit, he greeted Head with a hug, which he had routinely done for several years because Head was a close friend of his long-time girlfriend and a friend of his. R. at 30–31. Smith stated that their cheeks touched during the hug but that he did not attempt to kiss her or otherwise touch her inappropriately. R. at 31. Although the USDA and the EEOC found Head's allegations to be wholly unsubstantiated at the administrative level, the court assumes that the allegations are true and views the record in the light most favorable to Head.

After the alleged incident, Head did not immediately leave Smith's office. Instead, she sat down and spoke with him for about 25 minutes. R. at 24–25, 67–68. Once Head left Smith's office, she went outside to smoke with at least two other individuals: Terry Norris, who was another job applicant, and Robert Seals, who was one of the interviewers. R. at 40, 99. Head failed to mention anything about the alleged sexual harassment to either Norris or Seals. R. at 26, 40, 99. Instead Head was conversant, laughing and joking, and did not appear to be upset. R. at 40, 44, 96–97, 99. Seals recalls that Head was "smiling" and "eager to interview." R. at 40.

Although Smith was a supervisor (fourth-tier above Head), he was not on the interview panel and did not participate in the hiring decision. Rather, Angela Hooper, Robert Seals, and Charles Dubose were on the interview panel. R. at 34. Hooper was the decisionmaker. See R. at 34–35. As for Head's interview performance, Head admits that she did not say anything about the alleged harassment to any of the interviewers or anyone else at the Raleigh field office on the date it occurred. R. at 27, 68, 72. Moreover, Hooper and the two other panelists explained that Head appeared eager to interview for the position. R. at 36, 40, 44. The panelists stated that Head did not appear to be upset, distracted, or any more nervous than the other candidates. R. at 36, 40, 44, 94, 97. Nonetheless, during the interview, Head did not provide detailed answers and could not answer basic questions about the position, which indicated a lack of preparation and experience. R. at 35, 40–41, 44–45. Additionally, Head's resume indicated that she had computer experience with Excel (which she misspelled "Excell" on her resume (R. at 120)), but she could not elaborate on the experience and ultimately told the panel that she did not have much experience with Excel. R. at 35, 40–41. These admissions and other typographical errors on her resume caused Head to lose credibility with the panel. R. at 35, 40–41. Furthermore, the panelists opined that Head, who wore denim jeans and a low-cut blouse to the interview, was not dressed appropriately for the interview. R. at 35, 93–94, 97. According to the panelists, Head acted unprofessionally during the interview when she spent most of the interview adjusting her low-cut blouse. R. at 35, 93, 97.

3

After the interviews concluded, the panel scored the six candidates objectively according to their interview answers and applications. See R. at 35–36, 41, 44–45, 94. Four candidates received high scores—interview scores in the 300s and education and training scores in the 40s—and Hooper offered positions to those four. R. at 16. The other two candidates—Head and a male—scored significantly lower, with interview scores in the 200s and education and training scores in the 30s. See R. at 16. Based upon Head's interview, application, and overall impression, Head received lower scores and was not as qualified as the other applicants. R. at 36, 40–41, 44–45. Thus, Hooper decided not to offer Head or the low-scoring male candidate a job in Cotton Programs. R. at 16, 36, 41, 44–45.

Hooper called Head on May 7, 2007, and told her that she would not receive an offer for a position. R. at 36. Head asked Hooper if she was not selected because she applied only for the Memphis vacancy. R. at 36, 113. Hooper responded that Head was not selected because she did not score as high as the other applicants on her interview and application matrix. R. at 36, 113.

On May 10, 2007, Head filed an EEO claim with the USDA alleging that Smith sexually harassed her on May 2, 2007. R. at 27, 69. Head claimed that she performed poorly at the interview because she was upset from the sexual harassment. [D.E. 1-1] 1. Head also alleged that she was not selected for the Memphis position due to sex discrimination. See id. at 2. Head made her EEO claim eight days after the alleged incident with Smith, three days after Hooper told her that she was not selected for the new job, and two days before she was scheduled to lose her old job in the RIF.

The USDA's EEO counselor investigated Head's allegations and prepared a Report of Investigation, dated January 14, 2008. As part of the investigation, the USDA's counselor obtained sworn statements from relevant witnesses, including Head. See R. at 64–74. The USDA's EEO counselor did not substantiate any sex discrimination, including sexual harassment. See [D.E. 52 -1].

4

On August 13, 2008, Head elected to receive a Final Agency Decision from the USDA, rather than request a hearing before an EEOC Administrative Judge. See [D.E.1-1] 2. On December 31, 2008, the USDA issued the Final Agency Decision and found that Head had failed to establish a prima facie case of sexual harassment or disparate treatment based on sex. Id. at 2–4. On February 6, 2009, Head timely appealed this decision to the EEOC, Office of Federal Operations. On July 7, 2010, the EEOC issued its decision on appeal, rejected Head's claims, and affirmed the Final Agency Decision. Id. at 5–9.

On October 5, 2010, Head, proceeding pro se, timely filed a civil action against defendant in the United States District Court for the Middle District of Tennessee. The complaint contains only an allegation of a sexually hostile work environment in violation of Title VII. See Compl. ¶¶ 8–9. The USDA moved to dismiss based on improper venue, or in the alternative to transfer venue. On August 4, 2011, the Middle District of Tennessee transferred the action to this court [D.E. 37, 40].

II.

In considering the USDA's motion for summary judgment, the court views the evidence in the light most favorable to Head and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must initially come forward and demonstrate an absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 586–87.

5

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). It is insufficient to show a "mere . . . scintilla of evidence in support of the [nonmoving party's] position . . . ; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

Head alleges a sexually hostile work environment under Title VII. To prove such a claim, Head must prove that (1) she experienced unwelcome harassment; (2) the harassment was based on her gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. See, e.g., EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ochletree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc).

In order to be actionable under Title VII, Head must show that the workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citation and quotations omitted). The work environment must be one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so. See Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). Whether the alleged discriminatory conduct is sufficiently hostile depends on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 787–88 (quotation omitted). Isolated incidents, unless "extremely serious," will not amount to discriminatory changes in the terms and conditions of employment. Id. at 788. Title VII does not

6

create a "general civility code" in the workplace. Id. (quotation omitted). Likewise, general complaints of rude or boorish treatment are not sufficient to sustain a hostile work environment claim. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006); cf. Ocheltree, 335 F.3d at 328–30. Title VII only proscribes behavior that is "so objectionably offensive as to alter the conditions of the victim's employment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (quotation omitted).

Head bases her sexual harassment claim on the single incident on May 2, 2007, in which she alleges that Smith hugged her, kissed her, and "brushed" his hands past her breasts and buttocks, but did not "grab or squeeze" her breasts or buttocks. R. at 66. A single incident of sexual harassment (such as a sexual assault) may be sufficiently severe (i.e., "extremely serious") to be actionable. See, e.g., Okoli v. City of Baltimore, 648 F.3d 216, 220 n.5 (4th Cir. 2011) (collecting cases); Whitten v. Fred's, Inc., 601 F.3d 231, 243 (4th Cir. 2010). Head's evidence, however, is insufficient. See, e.g., Uppal v. Hosp. Corp. of Am., 482 F. App'x 394, 397 (11th Cir. 2012) (per curiam) (unpublished); Wilkie v. Dep't of Health & Human Servs., 638 F.3d 944, 953–54 (8th Cir. 2011); Sutherland v. Mo. Dep't of Corr., 580 F.3d 748, 750–52 (8th Cir. 2009); Paul v. Northrop Grumman Ship Sys., 309 F. App'x 825, 828–29 (5th Cir. 2009) (per curiam) (unpublished); Gibson v. Potter, 264 F. App'x 397, 401 (5th Cir. 2008) (per curiam) (unpublished); Clark v. United Parcel Serv., Inc., 400 F.3d 341, 351–52 (6th Cir. 2005); Valentine-Johnson v. Roche, 386 F.3d 800, 814 (6th Cir. 2004); Perez v. Norwegian-Am. Hosp., Inc., 93 F. App'x 910, 914 (7th Cir. 2004) (per curiam) (unpublished); Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 993–94 (8th Cir. 2003); Brooks v. City of San Mateo, 229 F.3d 917, 921, 926 (9th Cir. 2000). Simply put, even viewing the record in the light most favorable to Head, Smith's boorish behavior was not sufficiently severe to be objectively hostile. Moreover, Head makes no claim of a pervasive sexually hostile work environment. Cf. Ocheltree, 335 F.3d at 328–30. Accordingly, the court grants defendant's motion

for summary judgment as to Head's sexual harassment claim.[2]

Head also appears to assert that she did not receive the position in Memphis due to sex discrimination. See [D.E. 1-1] 2. During the USDA's EEO process, the agency investigated Head's allegation of disparate treatment and rejected it. See id. The EEOC did as well. See id. at 5. Head's complaint in this court, however, asserts only a claim for sexual harassment, and does not assert disparate treatment based on her sex. See Compl. ¶¶ 8–9. Accordingly, Head failed to timely file suit concerning any claim of disparate treatment based on her sex arising out of her non-selection for the Memphis position. See 42 U.S.C. § 2000e-16(c); Mason v. Wyeth, Inc., 183 F. App'x 353, 358–60 (4th Cir. 2006) (unpublished); Laber v. Harvey, 438 F.3d 404, 429 n.25 (4th Cir. 2006) (en banc); Burton v. Potter, 339 F. Supp. 2d 706, 708 n.2 (M.D.N.C. 2004). Moreover, nothing warrants equitable tolling in order to permit Head to assert this otherwise untimely claim. See Irwin v. Dep't of Vet. Affairs, 498 U.S. 89, 95–96 (1990); Cochran v. Holder, 564 F.3d 318, 320–25 (4th Cir. 2009); Green v. Johnson, 515 F.3d 290, 304 (4th Cir. 2008); Rouse v. Lee, 339 F.3d 238, 246–47 (4th Cir. 2003) (en banc); Harris v. Hutchinson, 209 F.3d 325, 330–31 (4th Cir. 2000). Thus, the court dismisses Head's disparate treatment claim.

Alternatively, even if Head did timely file her disparate treatment claim as part of this case, it fails as a matter of law. Head lacks direct evidence of disparate treatment; therefore, she relies on the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S.

---

[2] In opposing summary judgment, Head discusses another incident of Smith's alleged sexual harassment. See R. at 70–72; [D.E. 55], 4–6, 10. According to Head, in August 2005, she attended a 40th birthday party for her friend, who also was Smith's long-time girlfriend. R. at 70. At the time, Head was not a federal employee, but was scheduled to begin work for the USDA in late August 2005. Id. The party was unrelated to work and took place at a private residence in Kentucky. Id. At the party, Smith allegedly made sexually suggestive comments to Head. R. at 71.

Head never filed a timely EEO claim concerning this alleged behavior. See 29 C.F.R. § 1614.105(a)(1). Head also never reported this allegation to the USDA. See R. at 72. Thus, this allegation is irrelevant to analyzing the events of May 2, 2007. See EEOC v. Xerxes Corp., 639 F.3d 658, 674 (4th Cir. 2011); Howard v. Winter, 446 F.3d 559, 567 (4th Cir. 2006); Skipper v. Giant Food, Inc., 68 F. App'x 393, 399 (4th Cir. 2003) (per curiam) (unpublished).

792 (1973). Under McDonnell Douglas, Head first must make out a prima facie case of sex discrimination and show that (1) she is a member of a protected class; (2) she applied for and was qualified for an available position; (3) she was rejected despite her qualifications; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc); Dugan v. Albemarle Cnty. Sch. Bd., 293 F.3d 716, 720 n.1 (4th Cir. 2002); EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 (4th Cir. 2001). If Head succeeds in proving the prima facie case, the burden shifts to the USDA to articulate a legitimate, nondiscriminatory reason for the adverse employment action. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Finally, if the USDA carries this burden, Head must prove that the reasons offered by the USDA were a mere pretext for sex discrimination. Id.; see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006); King v. Rumsfeld, 328 F.3d 145, 150–54 (4th Cir. 2003); Wileman v. Frank, 979 F.2d 30, 33 (4th Cir. 1992).

Assuming without deciding that Head met her prima facie case, the USDA articulated legitimate, non-discriminatory reasons for her non-selection. See Hill, 354 F.3d at 298. Moreover, Head concedes that nothing that occurred between "me and Smith" affected the termination of her position, the status of her employment, or her non-selection. See R. at 72–73. Head has not raised a genuine issue of material fact that the USDA's reasons are a pretext for sex discrimination. See, e.g., Riley v. Honeywell Tech. Solutions, Inc., 323 F. App'x 276, 277–78 (4th Cir. 2009) (per curiam) (unpublished); Hux, 451 F.3d at 317–19; Mereish v. Walker, 359 F.3d 330, 336–39 (4th Cir. 2004). Furthermore, Head's assertion of sex discrimination does not create a genuine issue of material fact in the face of the substantial record evidence explaining the USDA's legitimate, non-discriminatory reasons for her non-selection. See Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999). Likewise, Head's own view of her employment skills does not create a genuine

9

issue of material fact. See King, 328 F.3d at 149; Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980).

III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 46]. The clerk shall close the case.

SO ORDERED. This 17 day of January 2013.

JAMES C. DEVER III
Chief United States District Judge